PFLEGHAR HARDWARE SPECIALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11700. Promulgated April 2, 1928.

*Henry F. Parmelee, Esq., Harry A. Fellows, Esq.,* and *L. B. Baker, Esq.,* for the petitioner.
*James A. O'Callaghan, Esq.,* for the respondent.

OPINION.

LOVE: In this proceeding none of the essential facts are contested. It was stated at the hearing that the values placed on the tangible assets, as given in our findings of fact, were not controverted and that the only issues involved were whether or not the petitioner on March 1, 1913, owned good will, and if so, was it of any value and how much. Was that asset, if such it be, sold and conveyed to the purchaser?

Petitioner argues that the possession of good will is shown by the large profits made by it during the four and one-half years immediately prior to 1913.

Abnormal profits, standing alone, are not evidence of a good will asset. In *Joseph Z. Muir et al.*, 4 B. T. A. 893, we said:

> The only evidence offered in the attempt to prove good will was the average annual earnings and the average tangible assets as shown by the books of the years 1908 to 1912, inclusive. These figures, standing alone, are not sufficient evidence of the existence of good will to warrant our disturbing the Commissioner's finding.

When the possession of good will is shown, profits are sometimes used to assist in measuring its value. There may be large profits in the absence of any of the elements of good will, or there may be small profits, or even a loss, when good will exists.

It may be suggested here that not every circumstance and condition that tends to the advantage of a certain business may be classified and capitalized as good will. It may be true that the term " good will " has been used to include circumstances and conditions other than such as legitimately belong in the ambit of that term, but we believe that good will is fairly well and in a fairly comprehensive manner, defined as follows:

> Good will may be defined to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds or property

employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position or common celebrity, or reputation for skill, affluence, punctuality, or from other ancient partialities or prejudices.

The term " good will " in its legitimate sense, implies or connotes a condition where the public, or at least a substantial number of people, will continue to deal with the establishment by force of habit or otherwise, regardless of a change of ownership. It does not follow, however, that in the absence of such conditions as may legitimately be called " good will," an establishment may not possess advantages that may be capitalized. There may be such conditions. That petitioner possessed some advantages in the conduct and operation of its manufacturing business seems apparent. One of the significant facts tending to indicate the possession of such advantages and their value, is the fact that the purchase price in 1919 was greater than the depreciated cost of the tangible assets. John B. Kennedy, witness for petitioner, who has been president of the English & Mersick Co. for 29 years, testified that had there been no going concern, the tangible assets would not have been worth what he paid for the business.

Kennedy knew the history of petitioner, he knew the personnel of its labor organization and the skill and efficiency of its workmen, and knew the class of work they turned out. He nowhere stated, however, his opinion of the value, either of the tangible or intangible assets. All the evidence indicates that conditions were practically the same in 1913 as in 1919, and whatever value, if any, that intangible asset had in 1919, it had the same in 1913. What was that value? The depreciated cost of tangible assets in 1919 was $186,111.75. The sale price of the plant (aside from the inventory of merchandise) was $300,000. Petitioner asks us to hold that its intangible asset possessed a value at least equal to the difference, that is, $113,888.25, which is nearly 38 per cent of the total sales price.

We are of the opinion that the evidence in this case fails to show such a value for the intangible asset. Would any other person in 1919 have paid $300,000 for that plant? Would any other person in 1913 have paid $113,000 more than the value of the tangible assets for the plant? And, further, a very pertinent question is whether or not the English & Mersick Co. in 1913 would have paid $113,000 more than the value of the tangible assets. There is no evidence in the record that tends to justify an affirmative answer to either of the foregoing questions.

There is no evidence other than the large profits, by which we may measure that value. As heretofore stated, capitalizing profits by formulae is sometimes resorted to as an aid, or as it were, to check against other evidence, but its use alone is very unsatisfactory. If

petitioner possessed an intangible asset on March 1, 1913, we are not able from the record, to determine its value, if any.

With reference to the second assignment of error, we hold that in the sale of the plant, whatever intangible asset petitioner owned in 1919 was conveyed to the purchaser of the plant as an incident of the plant.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MARQUETTE, STERNHAGEN, and PHILLIPS concur in the result.

SMITH, TRAMMELL, and TRUSSELL dissent.